DOLE, The LOUIS. See Case No. 8,534.

DOLICK (LANE v.). See Case No. 8,049.

---

## Case No. 3,967.

### Ex parte D'OLIVERA et al.

[1 Gall. 474.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1813.

FOREIGN SEAMEN—STATUTORY REGULATIONS.

The act of 20th July, 1790, c. 29 [1 Stat. 131], regulating seamen in the merchants' service, does not apply to foreign seamen on board of foreign ships.

[Cited in Grant v. U. S., 58 Fed. 696.]

On a former day of this term, Samuel D. Parker, as counsel for [Antonio] D'Olivera and others, moved the court for a writ of habeas corpus, directed to the keeper of the gaol in Boston, to bring up the bodies of D'Olivera and others with the cause of com-

---

[1] [Reported by John Gallison, Esq.]

mitment, upon a petition stating, that they were confined under color of the authority of the United States. The habeas corpus was granted. And now at this day, the gaol keeper produced the prisoners in court, and made return of the writ. By the return it appeared, that the prisoners were in custody under a warrant of commitment from a justice of the peace, alleging that they were Portuguese seamen, belonging to a Portuguese vessel now in Boston, and that they had been convicted, before him, of a desertion from the vessel. The warrant was directed to the keeper of the gaol, requiring him, in the name of the commonwealth of Massachusetts, to keep the bodies of the petitioners, "that they may be secured, and forth coming, to proceed on the voyage in said ship, according to their agreement, and to be delivered thence for that purpose by some justice of the peace, &c. unless otherwise delivered by due course of law."

The cause was shortly argued by Parker for the petitioners, and by William Sullivan for the master of the vessel, upon whose complaint they had been committed.

STORY, Circuit Justice. The only difficulty, which the court has felt in this case, has been from the warrant of commitment being in the name of the commonwealth of Massachusetts, and not of the United States of America. That the justice meant to act under the authority of the United States, and in a case, which he supposed to be within the 7th section of the act of the 20th of July, 1790, c. 29 [1 Stat. 131], for the government and regulation of seamen in the merchants' service, is conceded on all sides, and can admit of no reasonable doubt. Desertion from a merchant ship is no offence, either by the common or the statute law of Massachusetts; and it would be hard to presume, that the magistrate meant in this case to act without color of jurisdiction, and for purposes of wanton oppression. The warrant ought undoubtedly to have been in the name of the United States, and not of the commonwealth of Massachusetts. It was a strange mistake, but such as we have been informed has prevailed in practice in this place, almost ever since the existence of the act. Upon an attentive examination of the whole papers submitted to our consideration, notwithstanding the above error, we think that sufficient is apparent upon the face of them, to show that the magistrate did commit the party under color of the authority of the United States. We feel ourselves bound to presume, that he meant to commit in exercise of a lawful jurisdiction, (applied, however, to wrong objects), rather than to assume a jurisdiction, which under no circumstances could receive a shadow of authority from the laws of the state.

Having disposed of this objection, we are of opinion, that the act for the regulation of seamen exclusively applies to seamen en-

gaged in the merchants' service of the United States. It may be a serious inconvenience, that congress has not extended the provisions to cases of foreign seamen in foreign vessels, in compliance with that comity, which it is understood many foreign nations exercise in favor of this country. Whatever may be the evil, we can only regret it; it is for another tribunal to apply the remedy. We order, therefore, that the prisoners be discharged; and upon the payment of the costs of this application and the gaoler's fees, we shall direct an officer to deliver them to the master on board of his vessel. We think ourselves bound to do thus much, from a desire not to encourage desertion among foreign seamen, there appearing no reason to suspect the master of any improper conduct.