## UNITED STATES v. TSOKAS et al.

(Circuit Court, S. D. New York. March 27, 1908.)

CONSPIRACY—CONSPIRACY TO COMMIT AN OFFENSE AGAINST THE UNITED STATES —VIOLATION OF IMMIGRATION LAW.

Immigration Act Feb. 20, 1907, c. 1134, § 4, 34 Stat. 900 (U. S. Comp. St. Supp. 1907, p. 393), provides that "it shall be a misdemeanor" for any person to prepay the transportation or in any way to assist or encourage the importation of any contract laborer into the United States. Section 5 provides that for every violation of section 4 the persons knowingly violating the same "shall forfeit and pay for every such offense the sum of $1,000, which may be sued for and recovered by the United States or by any person who shall first bring his action therefor," etc. *Held,* that section 4 defines a criminal offense, and that, although the act provides no criminal punishment therefor, an indictment will lie under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), for a conspiracy to commit such offense.

On Demurrer to Indictment.

Henry L. Stimson, U. S. Atty., and Winifred T. Denison, Asst. U. S. Atty.

Hugh Gordon Miller, for defendants.

CHATFIELD, District Judge. The defendants herein have been indicted for conspiring to commit an offense, under section 4 of the immigration act (Act Feb. 20, 1907; c. 1134, 34 Stat. 900 [U. S. Comp. St. Supp. 1907, p. 393]). This section provides that it shall be a misdemeanor to prepay the transportation or assist or encourage the importation of contract laborers into the United States. Section 5 of the same act provides that for every violation of the provisions of section 4 the person, partnership, company, or corporation violating the same "shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered, as debts of like amount are now recovered in the courts of the United States."

It will be apparent from an examination of these sections that no punishment in the way of fine or imprisonment is provided for a violation of section 4. It is therefore argued that no offense against the United States is defined by section 4 upon which an indictment can be found under the provisions of section 5440, Rev. St. (U. S. Comp. St. 1901, p. 3676), which forbids a conspiracy to commit an offense against the United States. The provisions of section 5440 specify a

163 F.—9

punishment of imprisonment for not more than two years or a fine of not more than $10,000, or both.

Further objection is raised that, if sections 4 and 5 provide for nothing more than a civil penalty, it is impossible to cover the omission of punishment in a criminal sense by calling the conspiracy section to the assistance of the prosecution.

The history of section 4 is as follows: In the former immigration law, which was repealed by Act Feb. 20, 1907, § 2, excluded from admission into the United States any person whose ticket or passage is paid for with the money of another, or who is assisted by others to come, etc., with a proviso that skilled labor might be imported under certain conditions, and that the provisions of the law applicable to contract labor should not be held to exclude certain professional individuals and domestic servants.

Section 4 of the same act (Act March 3, 1903, c. 1012, § 4, 32 Stat. 1214) was as follows:

"Sec. 4. That it shall be unlawful for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any alien into the United States, in pursuance of any offer, solicitation, promise, or agreement, parole or special, expressed or implied, made previous to the importation of such alien to perform labor or service of any kind, skilled or unskilled, in the United States."

Section 5 provided for forfeiture and payment by any person or corporation violating the provisions of section 4, "for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person," etc. When the present law was adopted, section 5 was practically left intact, and it will be noted that under the former law the unlawful act specified in section 4 of that law was called an offense in section 5; but in the present law section 4 was changed to read as follows (the italicized words being used to indicate the changes from the former statute):

"Sec. 4. That it shall be a *misdemeanor* for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any *contract laborer or contract laborers* into the United States, *unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section two of this act.*"

It will thus be seen that the principal change, so far as the present question is concerned, was to substitute the word "misdemeanor" for the word "unlawful."

It is useless to attempt to decide this particular question from the various interpretations of the words "offense" and "penalty," inasmuch as many so-called offenses and penalties have been held to be merely definitions of a civil liability. In fact, section 5 of the present act is a patent illustration of an "offense" for which a civil "penalty" may be collected. On the other hand, penalties have been held to be fines, and capable of collection by indictment or presentment, as well as by civil suit. United States v. Moore (C. C.) 11 Fed. 248.

The use of the word "misdemeanor," however, in section 4, would seem

to plainly indicate the intent of Congress to treat a violation of the section as a criminal matter, for in no body of law and in no system of statutes has a misdemeanor ever been, so far as it is known to this court, considered anything but a branch of the criminal law. The United States statutes have repeatedly recognized felonies, and some of the states by statutes make any crime, not a felony, a misdemeanor. The statutes of the United States have repeatedly denominated certain criminal offenses as misdemeanors, even with respect to crimes for which an imprisonment of several years at hard labor is provided. It is impossible to understand what intent Congress could have had in the use of the word "misdemeanor," if the law was intended to be left in its former condition, and to provide for no remedy except the judgment of a civil suit. It is impossible to determine whether the framers of the law were acting under the supposition that there was a general provision defining punishment for a misdemeanor, or whether the omission of any penalty for the crime was through oversight. But, in any event, the act has defined a crime, and has provided no punishment within the limits of the act itself. This is not fatal. U. S. v. Van Schaick (C. C.) 134 Fed. 602. As in U. S. v. Kellum (C. C.) 7 Fed. 843, a civil suit may be the only remedy; but an offense, of itself a crime, is clearly defined.

Under such circumstances, a conspiracy to commit the crime can be alleged, and it is no objection to say that a punishment is provided by the conspiracy statute but not by section 4. Such objection would apply as well in any case where the punishment provided by section 5440 is different from that contained in the particular statute defining the crime, to commit which a conspiracy might be alleged.

The demurrer will be overruled.